IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGEL LUNA,

      **Plaintiff,**

      vs.                                      Civ. No. 14-1095  KG/KK

**SOCIAL SECURITY ADMIISTRATION,**
Carolyn W. Colvin, Acting Commissioner,

      **Defendant.**

## ORDER OVERRULING DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on (1) Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, With Supporting Memorandum ("Motion"), filed on June 6, 2015 (Doc. 19); (2) the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (Doc. 25), filed January 29, 2016; and (3) Defendant's Objections to Proposed Findings and Recommended Disposition ("Objections") (Doc. 26), filed February 10, 2016.  The Court, having considered the pending Motion and Objections, the record, and the relevant law, finds that Defendant's Objections are not well taken and will overrule them, adopt the Magistrate Judge's PFRD, and grant Plaintiff's Motion.

### I.  Introduction[1]

On January 6, 2015, this Court issued an Order of Reference referring Plaintiff's Motion to United States Magistrate Judge Kirtan Khalsa for a recommended disposition.  (Doc. 11.)  The

---

[1] The Magistrate Judge's PFRD thoroughly discussed the standard of review, the applicable law and sequential evaluation process, and the factual background and procedural history of this case.  (Doc. 25 at 1-6.)  The Court will therefore refrain from repeating this information here.

Magistrate Judge filed a PFRD pursuant to the Order of Reference on January 29, 2016, recommending that the Court grant Plaintiff's Motion. (Doc. 25.) Defendant timely filed Objections to the PFRD on February 10, 2016, to which Plaintiff did not respond. (Doc. 26.) Plaintiff's Motion, the Magistrate Judge's PFRD, and Defendant's Objections are now before the Court.

## II. Analysis

When a party files timely written objections to a magistrate judge's recommendation on a dispositive matter, the district court must conduct a *de novo* review, and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). *De novo* review requires the district judge to consider relevant evidence in the record and not merely to review the magistrate judge's recommendation. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). "[A] party's objections to the magistrate judge's [PFRD] must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d at 1060.

Plaintiff Angel Luna ("Mr. Luna") raised three issues as grounds to remand in his Motion.[2] The Magistrate Judge found grounds to remand on the issue of whether the ALJ failed to properly weigh and evaluate the opinion evidence related to Mr. Luna's mental impairment. (Doc. 25 at 7.) The Magistrate Judge, therefore, did not analyze all of Mr. Luna's arguments. (*Id.*) Defendant objects to the Magistrate Judge's findings that the ALJ failed to properly weigh and evaluate the two medical opinions addressing Mr. Luna's mental impairments. (Doc. 26.)

---

[2] (1) The VE's testimony that Mr. Luna is able to work as a construction laborer (painter helper) was not consistent with the DOT; (2) the ALJ failed to evaluate or explain the weight he accorded to Dr. Louis Wynne's consultative opinion; and (3) the ALJ failed to provide specific findings or analysis regarding the physical and mental demands of Mr. Luna's past relevant work. (Doc. 19 at 6-11.)

Defendant concedes that the ALJ did not explicitly state the weight he gave to each opinion, but contends that the weight of the two opinions was "crystal clear" and is not grounds to overturn the ALJ's determination. (*Id.* at 2.) Defendant further contends that the ALJ provided sufficient reasons for rejecting the examining consultant's opinion and adopting the reviewing consultant's opinion. (*Id.* at 3-7.) Finally, Defendant contends that remand based on an insufficient discussion of the reviewing consultant's opinion is inappropriate because Mr. Luna cannot show that he was harmed by that alleged omission. (*Id.* at 7.) Defendant requests the Court reject the Magistrate Judge's PFRD and instead affirm the Commissioner's final decision denying Mr. Luna's applications for disability insurance benefits and supplement security benefits. (*Id.* at 8.)

The Court has considered Defendant's Objections and the relevant law, and, based on a *de novo* review of the record, finds that the Objections are without merit, and will adopt the Magistrate Judge's PFRD in whole.

### A. Medical Opinion Evidence

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c), 404.1527(e)(2)(ii), 416.927(c) and 416.927(e)(2)(ii); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."). "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th

Cir. 1995)).³ An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007). However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005). An ALJ is required to given controlling weight to the opinion of a treating physician if is it supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300. Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215.

At issue here is whether the Magistrate Judge correctly found that the ALJ failed to properly weigh and evaluate the medical opinion evidence related to Mr. Luna's mental impairments. In this case, the ALJ considered two medical opinions in determining Mr. Luna's residual functional capacity ("RFC") assessment as to his nonexertional mental limitations. (Tr. 24.) One opinion was from State Agency examining medical consultant Dr. Louis Wynne, and the other from State Agency nonexamining medical consultant Dr. David Kirk. (*Id*.) Dr. Wynne's opinion assessed greater limitations than Dr. Kirk's opinion. (Tr. 22-23, 24.) The

---

[3] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

ALJ determined that Dr. Kirk's opinion was more consistent with the credible evidence. (Tr. 24.)

In his determination, the ALJ provided a summary of examining consultant Dr. Wynne's examination and findings.  The ALJ noted that Dr. Wynne informed Mr. Luna and his wife that he spoke only rudimentary Spanish and that the results of a psychological exam held in a language other than the claimant's first language could be open to question. (Tr. 22.)  The exam nonetheless proceeded with Mr. Luna's wife acting as the interpreter. (*Id.*)  The ALJ stated that Dr. Wynne

> diagnosed anxiety, by history, alcohol abuse in remission, and rule out borderline intellectual functioning.  He opined that the claimant would be limited to performing simple tasks, and his concentration and ability to persist at simple work tasks "appear to be severely impaired[,]" could not interact well with the general public, coworkers or supervisors, and that he might not recognize hazards, and would have difficulty adapting to changes in the workplace.  He assessed a Global Assessment of Functioning score of 40.

(Tr. 22-23.).  The ALJ neither summarized nor discussed the content of non-examining consultant Dr. Kirk's opinion.  In considering these two opinions, the ALJ ultimately determined that

> the Disability Determination Service psychological consultant, David Kirk, Ph.D., on September 2, 2011, found that the claimant has moderate mental functional limitations. (Exhibit 4A/7).  As specifically noted by the psychological examiner, his examination was conducted with the claimant's wife acting as an interpreter.  Dr. Wynne's opinion of the claimant's limitations appear to exceed the other credible evidence, including the claimant's demonstrated activities and abilities, including his demonstrated ability to earn over $7000 during the previous year.  Dr. Kirk's opinion is more consistent with the credible evidence.

(Tr. 24.)

1. **The Magistrate Judge Correctly Found That the ALJ Failed to Explicitly Accord Weight to the Medical Opinions at Issue**

Defendant objects to the Magistrate Judge's PFRD based on the Magistrate Judge's finding that the ALJ failed to explicitly accord weight to Dr. Wynne's and Dr. Kirk's opinions. (Doc. 26 at 1.) Defendant argues that the weight of the two opinions relative to each other was "crystal clear" and the ALJ's failure to explicitly state what weight he assigned amounts to harmless error. (*Id.* at 2.) It is undisputed that the ALJ failed to explicitly state what weight he accorded to either Dr. Wynne's or Dr. Kirk's opinions, as he was required to do. (Doc. 26 at 1.) *Hamlin*, 365 F.3d at 1215. Further, because the Magistrate Judge did not recommend remand based on this error alone, Defendant's Objections to the Magistrate Judge's PFRD as they relate to this issue are overruled.

2. **The Magistrate Judge Correctly Found That the ALJ Failed to Explain Why He Implicitly Rejected Dr. Wynne's Opinion**

Defendant next objects to the Magistrate Judge's PFRD based on the Magistrate Judge's findings that the ALJ failed to sufficiently explain why he implicitly rejected Dr. Wynne's opinion. (Doc. 26 at 3.) Defendant argues that the ALJ's decision as a whole supports his stated reasons for rejecting Dr. Wynne's opinion. Because Defendant's Objections address each of the Magistrate Judge's findings as to this issue separately, the Court will also address each argument separately.

   a. **The Magistrate Judge Correctly Found That The ALJ's Reasons Were Not Sufficiently Specific**

The Magistrate Judge found that the ALJ's general references to "other credible evidence" and "demonstrated activities," without more, were not sufficiently specific to make clear to the Court what evidence the ALJ relied upon to reject Dr. Wynne's opinion. (Doc. 25 at 11.) Defendant argues that even though the ALJ did not provide an in-depth discussion of his

6

reasons in this part of his determination, the ALJ discussed Mr. Luna's activities and abilities at other points in his determination. (Doc. 26 at 3.) Defendant specifically states that "the ALJ noted that Plaintiff had not had any inpatient psychiatric hospitalizations and was able to take care of his personal needs, socialize with family members, and attend church on a regular basis." (*Id.*) For the reasons discussed below, the Court is not persuaded this alters the Magistrate Judge's finding.

The Court agrees with the Magistrate Judge's finding that the ALJ's reasons for rejecting Dr. Wynne's opinion were not sufficiently specific. However, even if the Court were to assume that the ALJ relied on the specific reasons Defendant stated, they are not supported by substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

First, the ALJ's reliance on the absence of inpatient psychiatric hospitalizations as a basis for rejecting Dr. Wynne's opinion is not substantial evidence. "The absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). Further, "[m]edically determinable mental disorders present a variable continuum of symptoms and effects, from minor emotional problems to bizarre and dangerous behavior." SSR 85-16, at *1, 1985 WL 56855. The ability to perform substantial gainful activity in the face of mental impairment must be demonstrated through a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance. *Id.* To that end, the ALJ is required to consider, *inter alia*, medical evidence in light of the factors discussed in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). Here, the limited medical evidence supports that

Mr. Luna suffered with anxiety and depression.[4] Dr. Wynne, a psychologist, assessed certain limitations in Mr. Luna's ability to do work-related activities based on his impressions of Mr. Luna's psychological impairments.  (Tr. 352.)  At step two, the ALJ determined that Mr. Luna had a severe mental impairment.[5]  (Tr. 19.)  Citing to the absence of inpatient psychiatric hospitalizations to reject Dr. Wynne's opinion fails to appreciate the degrees of functional limitations associated with mental impairments, is irrelevant to the regulatory factors by which the ALJ should have weighed and evaluated Dr. Wynne's opinion, and does not constitute substantial evidence.

Second, the ALJ's reliance on his credibility findings regarding Plaintiff's ability to take care of his personal needs, socialize with family members, and attend church on a regular basis is misplaced because the ALJ mischaracterized the extent of Plaintiff's activities and abilities, and ignored the qualifications and limitations that he, and his mother, reported.  Although credibility findings are peculiarly within the province of the fact finder, they must be supported by substantial evidence and not just conclusions in the guise of findings.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1991).  Here, the ALJ's credibility findings are not supported by substantial evidence.  In his determination, the ALJ stated that

> [d]espite alleging a debilitated lifestyle, the claimant admitted (and confirmed by []his mother) that he is generally able to take care of his personal needs, do yard work, drive, socialize with family members, and attend church on a weekly basis.

---

[4] On February 5, 2009, Mr. Luna saw Patrick Moran, D.O. of First Choice Community Healthcare and reported, *inter alia*, anxiety for many years and panic attacks with shortness of breath and sweaty palms.  (Tr. 327.)  DO Moran assessed anxiety prescribed Paroxetine.  (*Id*., Tr. 326.)  On February 23, 2009, Mr. Luna saw Tasha Ludwick, D.O., of First Choice Community Healthcare and reported his anxiety improved with Paroxetine.  (Tr. 326.)  DO Luwick assessed anxiety and continued him on Paroxetine.  (*Id.*)  On November 3, 2010, Mr. Luna was assessed by a First Choice Community Healthcare provider with anxiety and depression and restarted on Paroxetine.  (Tr. 324-25.)  On June 3, 2011, Mr. Luna saw Silaja Cheruvu, M.D., and reported anxiety and had not taken medication for at least six months.  (Tr. 323.)  Dr. Cheruvu assessed anxiety and refilled his anxiety medication.  (*Id.*)

[5] Affective disorder.  (Tr. 19.)

>The claimant's wife told Dr. Karimova[6] that the claimant is able to take care of himself, feed himself, bathe himself, and dress himself.

(Tr. 23-24.) However, Mr. Luna reported in his Adult Functional Report that his sleep was impacted by headaches, anxiety attacks, stress, depression, and diabetes; he had to be reminded to shower and take his medications; his daughter took care of his hair; he was too sick to shave; he tried to do yard work when he felt good which was "really never" because he got very dizzy and had to sit or lay down when he tried; he could drive a car but did not go out alone because he was "scared to loss [sic] his vision or get [an] attack"; he never went into stores; he talked with his family because they understood his illness; the only places he went on a regular basis were church and home; and that his social activities were impacted by his depression, stress and forgetfulness. (Tr. 230-34.) Mr. Luna concluded that he felt like his "life [was] down the drain." (Tr. 234.) Mr. Luna's mother reported in her Third-Party Adult Function Report that Mr. Luna had to be reminded to clean himself, shave, and take his medications; his daughter did his hair; he started to clean the yard but became dizzy and had to stop; he was able to drive; he never shopped; he talked with his family every day; and attended Sunday church. (Tr. 214-217.) She remarked that "[h]e was a good and fun person before his sickness." (Tr. 220.) Mr. Luna's wife reported to Dr. Karimova that Mr. Luna was able to feed himself, bathe himself, and dress himself, but that he did not like to do so. (Tr. 355.) Thus, the ALJ's credibility findings failed to consider the full context of Mr. Luna's daily activities and social interactions. "[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Sitsler v. Astrue*, 410 F. App'x 112, 117-18 (10th Cir. 2001) (citing *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 742-43 (10th Cir. 1993) (ALJ took claimant's testimony out of context, selectively acknowledged only parts of statements, and presented his

---

[6] Dr. Natavan Karimova performed a consultative evaluation of Mr. Luna's physical impairments. (Tr. 355-58.)

9

findings as accurate reflections of statements)).  As such, assuming the ALJ relied on his credibility findings regarding Mr. Luna's activities and abilities to reject Dr. Wynne's opinion, as Defendant argues, they are not supported by substantial evidence.

Third, the ALJ's reliance on his credibility findings is not a sufficient basis for rejecting Dr. Wynne's objective findings. *Beard v. Colvin*, ___ F. App'x ___, 2016 WL 805690, at *2 (10th Cir. 2016) (finding that ALJ can discount provider's findings in medical report to extent they relied on what claimant reported, but that ALJ must provide reasons for rejecting objective assessment).  In his report, Dr. Wynne indicated he had reviewed medical records [from First Choice Community Healthcare South Valley] dated February 5, 2009,[7] and June 3, 2011,[8] and reviewed Mr. Luna's Adult Function Report and Mr. Luna's mother's Third-Party Adult Function Report.  (Tr. 350.)  Dr. Wynne noted Mr. Luna's subjective complaints and history. (Tr. 350-352.)   Dr. Wynne also noted, however, *his observations* of Mr. Luna and *his impressions* based on his estimation of Mr. Luna's psychological condition.   (Tr. 350-352.) Dr. Wynne's objective observations and findings included that Mr. Luna had skin eruptions/blemishes all over his body that he scratched throughout the examination; he was dressed casually and his hygiene and grooming were adequate; he maintained good eye contact, related easily, and was cooperative; his affect was flat, congruent with dysphoric mood, but he was alert; his speech was very soft and indistinct; there was no evidence of confusion, tangentiality, circumstantiality, or evasion; his fund of information was lower than average and his ability to abstract was impaired; his judgment, based on his answers to Wechsler Adult Intelligence Scale-type comprehension questions, was limited.  (*Id.*)  Dr. Wynne's Axis I

---

[7] On February 5, 2009, Mr. Luna saw Patrick Moran, D.O. and reported, *inter alia*, anxiety for many years and panic attacks with shortness of breath and sweaty palms.  (Tr. 327.)  DO Moran prescribed Paroxetine.  (*Id.*, Tr. 326.)

[8] On June 3, 2011, Mr. Luna saw Silaja Cheruvu, M.D., and reported, *inter alia*, anxiety helped by Paxil, but that he had not taken it in six months.  (Tr. 323.)  Mr. Luna requested a refill.  (Tr. 323.)

diagnosis was "anxiety NOS by history," and his Axis II diagnosis was "R/O borderline intellectual functioning."[9] (*Id.*) Dr. Wynne assessed a GAF score of 40.[10] (*Id.*) Dr. Wynne also assessed Mr. Luna's abilities to do work-related mental activities, and his opinion was that Mr. Luna's ability to concentrate and persist at simple work tasks appeared to be severely impaired; that he could not interact well with the general public, his coworkers, or his supervisors; that he would have difficulty adapting to changes in the workplace; and that he might not be able to recognize hazards. (*Id.*) Dr. Wynne's observations, questions, findings, impressions, and assessments amount to objective evidence. The ALJ's credibility findings failed to address Dr. Wynne's objective findings and do not provide a sufficient basis for rejecting them. *Beard,* ___ F. App'x ___, 2016 WL 805690, at *2.

For these reasons, Defendant's Objections to the Magistrate Judge's PFRD as to this issue are overruled.

### b. The Magistrate Judge Correctly Found That The ALJ's Reliance on Mr. Luna's Earnings Was Not Supported by Substantial Evidence

The Magistrate Judge found that the ALJ's reliance on Mr. Luna's limited earnings in 2010 to reject Dr. Wynne's opinion was not supported by substantial evidence because Mr. Luna's work attempt had been deemed unsuccessful. (Doc. 25 at 11.) Defendant argues that an unsuccessful work attempt is relevant to an ALJ's inquiry at step one to determine whether a claimant has engaged in substantial gainful activity. (Doc. 26 at 6.) Defendant additionally

---

[9] Borderline personality disorder (BPD) is a serious mental illness marked by unstable moods, behavior, and relationships. http://www.nimh.nih.gov/health/topics/borderline-personality-disorder/index.shtml.

[10] A GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders,* 32, 34 (4th ed. 2000). A GAF score of 40 indicates some impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed [wo]man avoids friends, neglects family, and is unable to work . . . ). *Id.* at 34.

argues that a claimant's work attempts, even though unsuccessful for purposes of the step one inquiry, are relevant to evaluating a claimant's credibility and opinion evidence.[11] (*Id*.) As such, Defendant contends that the ALJ appropriately relied on Mr. Luna's earnings to reject Dr. Wynne's opinion regarding Mr. Luna's nonexertional limitations because Mr. Luna testified he stopped working in 2010 because of his physical impairments and demonstrate he was capable of concentrating and persisting at simple work tasks at that time. (Doc. 26 at 7.) The Court is not persuaded.

Evidence of work attempts is one of many relevant factors an ALJ considers in determining a claimant's RFC and evaluating a claimant's credibility. *See* SSR 96-8p, 1996 WL 374184, *5; SSR 96-7p, 1996 WL 374186, at *5. An ALJ also considers whether evidence of work attempts could render opinion testimony not supported by relevant evidence or inconsistent with the record as a whole. *Hamlin*, 365 F.3d at 1215 (ALJ considers specific factors in determining what weight to give any medical opinion). Here, however, the Court agrees with the Magistrate Judge that the ALJ's reliance on Mr. Luna's one work attempt disproportionately emphasizes a two-month period of time over the forty-eight month period of time in which Mr. Luna was unable to work. Moreover, the ALJ completely ignored the circumstances of Mr. Luna's work attempt to which he testified. Mr. Luna testified that when he was unable to work satisfactorily for an employer because of his medical conditions, he attempted to start his own painting business in 2010. (Tr. 42-43.) Mr. Luna further testified, however, that his brief attempt failed because he wasn't able to drive, he had blurred vision, lung problems, psoriasis, skin boils, swollen feet, and diabetes. (Tr. 40-43.) Additionally, Mr. Luna reported on his disability application that he stopped working at that time due to *all* of his medical conditions,

---

[11] The ALJ noted that Mr. Luna's earning may be relevant to a consideration of an individual's residual functional capacity. (Tr. 19.)

including his mental impairments of anxiety, memory loss, mood disorder, and panic attacks. (Tr. 205.)

Finally, Defendant's argument - that the ALJ relied on Mr. Luna's earnings because they demonstrated that Mr. Luna was capable of concentrating and persisting at simple work tasks during 2010 - is not apparent from the ALJ's determination.  The ALJ simply points to Mr. Luna's "ability to earn" as evidence that Dr. Wynne's limitations are excessive, but he does not explain how or why that evidence supports his rejection of Dr. Wynne's opinion.  The Court will not adopt the Commissioner's post-hoc rationalization for the ALJ's lack of findings that are not apparent from the ALJ's decision itself.  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding court may not create or adopt post-hoc rationalizations to support ALJ's decision that are not apparent from ALJ's decision).

For these reasons, Defendant's Objections to the Magistrate Judge's PFRD as to this issue are overruled.

### c. The Magistrate Judge Correctly Found That It Was Error For The ALJ To Discount Dr. Wynne's Opinion Because Mr. Luna's Wife Acted as A Translator

The Magistrate Judge found that it was error for the ALJ to discount Dr. Wynne's opinion because his examination was performed with Mr. Luna's wife acting as a translator, and that the ALJ should have contacted Dr. Wynne for additional information if he questioned Dr. Wynne's findings on that basis.  (Doc. 25 at 11-12.)  Defendant argues that despite Dr. Wynne's disclaimer to the Lunas that his findings could be called into question given his rudimentary Spanish and suggested that they reschedule the exam,[12] they chose to proceed under these circumstances while bearing the burden of proving disability at this juncture.  (Doc. 26 at

---

[12] This suggestion is *not* in Dr. Wynne's exam report.  (Tr. 350.)

4.)  Defendant further argues that the ALJ was not under a duty to contact Dr. Wynne, that it is unclear what benefit would have been gained by contacting him because the ALJ had Dr. Kirk's evidence to rely on, and that Mr. Luna never alleged that the ALJ had a duty to contact Dr. Wynne.  (*Id.* at 4-5.)

It is beyond dispute that the burden to prove disability in a social security case is on the claimant.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  However, a social security disability hearing is nonadversarial, with the ALJ responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Id.* (citations omitted).  Further, it is the Social Security Administration's policy to ensure that "individuals have access to our programs and services regardless of their ability to communicate with us in English," and to ensure that individuals are not disadvantaged based on limited English proficiency.  *See* Soc. Disab. Claims Prac. & Proc. § 1:57 (2nd ed.).  This includes recognizing the need for language assistance and providing interpreters free of charge to any individual needing language assistance.  *Id.*  The Social Security Administration "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."  20 C.F.R. §§ 404.1519a and 416.919a.  Consultative exams are purchased only from a qualified medical source.  20 C.F.R. §§ 404.1519g and 416.919g.  A claimant or his representative may object to being examined by a designated medical source to perform a consultative exam based on the presence of a language barrier.  20 C.F.R. §§ 404.1519j and 416.919j.  If the report of the consultative examination is inadequate or incomplete, "we will contact the medical source who performed the consultative examination, give an explanation of

our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. §§ 404.1519p, 416.919p.

On June 10, 2011, Mr. Luna applied for disability benefits and reported to the disability interviewer that he did not speak, read, write, or understand English, and that his preferred language was Spanish. (Tr. 204.) Based on his alleged impairments, on August 16, 2011, the Social Security Administration purchased a consultative exam and referred Mr. Luna to Dr. Wynne so that he could collect a psychosocial history and perform a mental status exam. (Tr. 350.) The consultative exam was required because "[t]he evidence as a whole, both medical and non-medical, [was] not sufficient to support a decision on the claim." (Tr. 65.) Dr. Wynne noted in his report that he explained to Mr. Luna this was a "one-session evaluation performed under contract with NM DDS." (Tr. 350.) Dr. Wynne also noted that Mr. Luna' wife

> acted as an interpreter since [Mr. Luna] speaks little if any English. I made it clear to her that I speak only a very rudimentary Spanish and that the results of psychological examinations held in a language other than the claimant's first language can be open to question. Nonetheless both he and she insisted that we proceed.

(*Id*.) Dr. Wynne's exam report record does not indicate, as Defendant argues, that Dr. Wynne suggested Mr. Luna reschedule the exam. (Doc. 26 at 4.) Further, Dr. Wynne's report does not indicate that he informed Mr. Luna that he had the option of objecting to Dr. Wynne on the basis of a language barrier.[13] As such, Defendant's argument that Mr. Luna chose to proceed at this juncture while bearing the burden of proving disability is tenuous given the question of whether Plaintiff's choice was fully informed.

---

[13] Mr. Luna was not represented by counsel at the time of his consultative exam. Attorney William Gordon entered an appearance on Mr. Luna behalf on September 15, 2011. (Tr. 95.) Attorney Ronald Harris represents Mr. Luna in these proceedings. (Doc. 1.)

Social security hearings are nonadversarial, and the ALJ is responsible in every case to ensure that an adequate record is developed.  Here, the ALJ rejected Dr. Wynne's assessment, in part, because claimant's wife acted as an interpreter.[14]  The ALJ did not explain how or why claimant's wife acting as an interpreter informed his rejection.  However, rejecting Dr. Wynne's assessment on this basis, without more explanation, flies in the face of the nonadversarial nature of the social security disability process and the Social Security Administration's stated policy that individuals are not to be disadvantaged based on limited English proficiency.  Further, if the ALJ had questions or concerns about Dr. Wynne's findings based on Mr. Luna's wife acting as an interpreter, or for any other reason, regulations require an ALJ to contact the medical source, explain the evidentiary needs, and ask the medical source to furnish the missing information or prepare a revised report.  20 C.F.R. §§ 404.1519p and 416.919p.  To do otherwise, or to systematically reject a medical source's findings under these circumstances, would create a gross disadvantage to non-English speaking claimants.

Further, the Magistrate Judge appropriately addressed the ALJ's duty to contact the consultative examiner even though Mr. Luna did not raise the issue.  A reviewing court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence."  *Womack v. Astrue*, 2008 WL 2486524, at *5 (D. Okla. June 19, 2008) (quoting *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir. 1966)).  A court's duty to scrutinize the record as a whole to determine whether the conclusions reached are

---

[14] In Defendant's Response to Plaintiff's Motion, filed September 9, 20105, Defendant argued that Plaintiff's wife acting as a translator was a valid basis for discounting Dr. Wynne's opinion. (Doc. 23 at 8.) Defendant offers no legal support for this argument.  Further, the Magistrate Judge's PFRD noted that individuals have the option of using their own interpreters, such as a family member, provided the interpreter meets the Agency's criteria for interpreters. (Doc. 25 at 12, n. 13.)  There is no evidence that Dr. Wynne questioned Mr. Luna's wife's ability to adequately act as Mr. Luna's translator.

reasonable and whether the hearing examiner applied correct legal standards to the evidence is especially important because "unlike typical judicial proceeding, a social security disability case is nonadversarial[.]" *Hawkins*, 113 F.3d at 1164. Here, if the ALJ determined that Dr. Wynne's opinion was inadequate or incomplete based on Mr. Luna's inability to speak English or Mr. Luna's wife acting as a translator, regulations required the ALJ to contact Dr. Wynne for more information. As such, the Magistrate Judge appropriately found *sua sponte* that the ALJ did not apply the correct legal standard to this evidence.

Finally, Defendant's insistence that the ALJ did not need Dr. Wynne's findings because he had Dr. Kirk's fails to appreciate that Dr. Wynne's opinion was presumptively entitled to more weight than Dr. Kirk's, whose opinion was derived from a review of the medical record only. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

For these reasons, Defendants' Objections to the Magistrate Judge's PFRD as to this issue are overruled.

### 3. The Magistrate Judge Correctly Found That the ALJ Failed to Explain Why He Implicitly Accepted Dr. Kirk's Opinion

Defendant objects to the Magistrate Judge's PFRD based on the Magistrate Judge's findings that the ALJ failed to sufficiently explain why he implicitly accepted Dr. Kirk's opinion. (Doc. 26 at 7.) Defendant argues that the ALJ clearly discussed the medical opinions together and accepted Dr. Kirk's opinion for the same reasons he rejected Dr. Wynne's opinion. (*Id.*) Defendant further argues that remand based on a supposedly insufficient discussion of Dr. Kirk's opinion is inappropriate because Mr. Luna cannot show harm by the omission. (*Id.*)

An ALJ is required to provide an appropriate explanation for accepting a medical source statement. SSR 96-5p, WL 374183, at *5. As the Magistrate Judge pointed out, the ALJ's determination contains only one reference to Dr. Kirk's opinion when he summarily concluded

that Dr. Kirk's opinion was more consistent with the credible evidence. (Tr. 24.) A single conclusory sentence does not rise to the level of providing an appropriate explanation for accepting a medical source statement. Additionally, referring generally to "credible evidence," without more, is not sufficiently specific and does not make clear to the Court what evidence the ALJ relied upon in adopting Dr. Kirk's opinion. Moreover, the Court here has found that the ALJ's credibility findings are not based on substantial evidence. Thus, to the extent the ALJ relied on the same credibility findings to accept Dr. Kirk's opinion that he used to reject Dr. Wynne's opinion, as Defendant argues, the ALJ's reasons are not based on substantial evidence.

For these reasons, the Court finds Defendant's Objections as to this issue are without merit and are overruled.

### B. The Magistrate Judge Correctly Found That The ALJ's Error Is Not Harmless

Finally, the ALJ's insufficient discussion of the medical opinion evidence is not harmless error. Here, the ALJ considered two opinions related to Mr. Luna's mental impairments – one of which provided work-related mental limitations that were more restrictive than the other. The Court applies harmless error where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). Here, the ALJ failed to apply the correct legal standards in evaluating the medical opinion evidence, and factual matters could be resolved in another way were the correct analysis applied.

For these reasons, Defendant's Objections to the Magistrate Judge's PFRD as to this issue are overruled.

### III. Conclusion

For all of the above reasons, and for the additional reasons stated in the Magistrate Judge's PFRD, the Court finds that Defendant's Objections are without merit, and that the Magistrate Judge's PFRD should be adopted in whole. IT IS THEREFORE ORDERED as follows:

1. Defendant's Objections to Magistrate's Recommendation (Doc. 26) are **OVERRULED**;

2. The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 25) is **ADOPTED**; and,

3. This matter is remanded for proceedings consistent with the Magistrate Judge's Proposed Findings and Recommended Disposition.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**